IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FILED
2018 AUG 28 P 3:03

| | | |
|---|---|---|
| PAULETTE MYERS JAMES, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| SASE COMPANY, LLC, | ) | Civil Action No. 3:18-CV-356 |
| Defendant. | ) | Collier/Poplin |

## COMPLAINT

### I. NATURE OF THE CASE

1. This is an action seeking redress for the plaintiff for the conduct of the defendant constituting employment discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-101 *et seq..*, as well as for failure to pay overtime compensation and retaliation in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Tennessee statutory and common law claims related to misrepresentation.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this case involves federal questions based on federal statutes (ADEA and FLSA). The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to address the state law claims contained herein.

3. Venue in the Eastern District of Tennessee is appropriate pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Blount County, Tennessee, which is included in this judicial district.

### III. PARTIES

4. Plaintiff Paulette Myers James ("Plaintiff" or "Ms. Myers James"), is a resident of Blount County, Tennessee. Her date of birth is XX/XX/1947. During the time relevant to this Complaint, Ms. Myers James was employed by Defendant SASE Company, LLC.

5. Defendant SASE Company, LLC ("Defendant" or "SASE"), formed in the State of Washington as a limited liability company. Defendant operates a business that sells concrete preparation and polishing equipment. It is registered to do business in Tennessee and has an operations center in Rockford, Blount County, Tennessee. Defendant's principal address is 26423 79th Ave. S., Kent, WA 98032-7321, and its registered agent for service of process is Capitol Corporate Services, Inc. at 992 Davidson Dr. Suite B, Nashville, TN 37205-1051.

6. At all relevant times, Defendant SASE was an "employer," as that term is defined by the ADEA, 29 U.S.C. §630(b), the THRA, Tenn. Code Ann. §4-21-102(5), and FLSA, 29 U.S.C. §203(d).

7. At all relevant times, Ms. Myers James was an "employee" of Defendant as defined by the FLSA, 29 U.S.C. §203(e).

8. Defendant is and, at all times hereinafter mentioned, was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), in that said enterprise had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on

goods or materials that have been moved in or produced for commerce, and that said enterprise has annual sales of not less than $500,000.

9. At all relevant times, Defendant has employed at least 50 employees.

## IV. CONDITIONS PRECEDENT

10. Ms. Myers James timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant SASE engaged in unlawful discrimination in violation of the ADEA.

11. The EEOC issued a Dismissal and Notice of Rights letter dated May 31, 2018, and received by her after that date.

12. This Complaint is timely filed in this Court within ninety days from the date Ms. Myers James received the notice of her right to file a lawsuit in court. All administrative conditions precedent to filing this action have been met.

## V. FACTUAL ALLEGATIONS

13. Plaintiff Myers James worked in the position of Accounts Payable Associate for Defendant SASE from 2010 to 2018. During the entire time that she worked for Defendant, her primary duties included processing invoices and making payments on behalf of Defendant, preparing expense reports, and related bookkeeping and clerical duties.

14. Ms. Myers James was qualified for the position of Accounts Payable Associate. She worked in that position for eight years prior to her termination and received merit raises and performance bonuses. During the entire time that she worked for Defendant, she remained an employee in good standing until the moment of her unlawful termination.

15. From June 2010 until February 2017, Ms. Myers James worked at the SASE office in Kent, Washington.

16. Between 2015 and 2016, SASE entered a period of rapid growth, with annual revenue increasing from approximately $15 million to approximately $43 million. Consequently, in late 2015 or early 2016, Ms. Myers James' workload significantly increased because she was the sole SASE employee who handled Accounts Payable ("AP"). During the last three years of her employment, Ms. Myers James routinely worked in excess of 40 hours per week in order to complete the work that Defendant required of her.

17. Defendant considered Ms. Myers James a "salaried" employee and did not instruct her to keep records of her hours worked or pay her overtime for hours worked over 40 per week. Defendant paid Ms. Myers James $1575 twice monthly, regardless of how many hours she worked in the pay period, even though each pay check she received purported on its face to cover 86 hours of work.

18. The FLSA requires covered employers, such as Defendant, to compensate non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per work week. During the applicable statutory period, Defendant permitted Ms. Myers James to routinely work more than 40 hours per week without overtime compensation.

19. During the applicable statutory period, Ms. Myers James' primary job duties were such that she should have been paid overtime compensation for all hours worked over 40 in a work week.

20. Ms. Myers James did not perform exempt duties during the applicable statutory period. For example, she did not customarily and regularly direct the work of two or more full-

time employees of Defendant. Also, she did not have the authority to hire or fire other employees, nor did she ever recommend that Defendant's employees be fired or disciplined. Further, her primary duties did not require her to exercise discretion and independent judgment on significant business matters. Any significant decision-making regarding vendor accounts and accounts payable were made by her supervisors or other employees of Defendant. She was required to seek approval for any non-routine payments that she made on behalf of SASE.

21. Beginning in 2016, Ms. Myers James routinely complained to her supervisors about her long work hours and the lack of additional pay to compensate her for the increase in work, and/or she questioned her supervisors about whether she should be receiving overtime compensation. For example, she complained that she was working up to 12 hours a day but only getting paid for 8 hours. When she questioned her supervisors about whether she should be receiving overtime compensation, Ms. Myers James was simply told that she was salaried and that Defendant does not pay overtime.

22. To Ms. Myers James' knowledge, Defendant classifies all of its employees as "salaried" employees who do not receive overtime compensation.

23. In October 2016, Defendant offered to Ms. Myers James a transfer to the Rockford, Tennessee offices of SASE, located near Knoxville, Tennessee, for at least two years, with the option of remaining for a third year. Ms. Myers James accepted and started work in the Rockford offices on February 20, 2017. Per agreement, SASE paid for Ms. Myers James to move from Kent, Washington, to the Knoxville, Tennessee area. Defendant also agreed to reimburse Ms. Myers James for two round-trip airplane tickets per year from Knoxville to Kent, Washington for 2017 and 2018.

24. In proposing the transfer from Washington to Tennessee, SASE management told Ms. Myers James that she would receive help in the AP department so that she would no longer have to work over 40 hours per week. Specifically, Ms. Myers James was to receive help from an employee named Meghan Moore, whom Ms. Myers James would also train so that she could become Ms. Myers James' back up in performing AP duties. Ms. Moore was substantially younger than Ms. Myers James.

25. After starting in the Rockford office, Ms. Myers James had concerns about Ms. Moore, including Ms. Moore's resistance to training, which resulted in Ms. Myers James continuing to have to work more than 40 hours per week to accomplish her duties. Ms. Myers James complained to her direct supervisor in Tennessee and Defendant's Controller, Larry Bowlby, as well as his supervisor and Vice President of Operations, John Abrahamson, about her continued demanding workload and long work hours. She spoke to both men about the representations that had been made to her about receiving help once she moved to Tennessee so that her workload would decrease.

26. After Ms. Myers James had been in the Tennessee office for a year, she continued to work an average of over 60 hours per week. Mr. Abrahamson did not remedy the situation or take any efforts, to Ms. James' knowledge, to correct Ms. Moore's behavior or performance, despite acknowledging that Ms. Moore's performance was subpar and despite knowing of Ms. Myers James' long working hours without additional pay.

27. During her last three years of working at SASE, Ms. James worked an average of 62 hours per week.

28. Ms. Myers James arranged a meeting with her supervisors Mr. Bowlby and Mr. Abrahamson, for March 1, 2018. She requested this meeting to discuss her concerns about Ms.

Moore's performance and attitude and her own continued difficult work load, as well as to request that, in the least, Ms. Myers James' pay be increased to reflect the amount of work she was doing.

29. During the March 1, 2018 meeting, Ms. Myers James passed out notes that detailed some of her concerns and complaints, including that she was still working over eight hours per day and on most weekends, had not gotten a pay increase in two years, and that her job needed to be handled by two people. Shortly after the meeting began and while reviewing the notes that Ms. Myers James had provided to him, Mr. Abrahamson abruptly stopped the meeting and notified Ms. Myers James that her employment was being terminated. The reasons he gave for her discharge was that Tennessee is "a right to work state," which he said meant that he could fire her without cause, and he also alleged that she created a "toxic work environment."

30. Mr. Abrahamson alleged that Ms. Myers James created a "toxic work environment," in part, because she was working more hours than the regular 9 A.M. TO 5 P.M. schedule, including on nights and weekends, which he believed was a liability for the company.

31. In addition to having to work long hours just to complete her required AP tasks, Ms. Myers James also routinely worked after normal business hours in Tennessee because most of Defendant's vendors were on the West Coast, and when she transferred to the Knoxville area, she needed to work after 5:00 P.M. to accommodate the time difference and handle the accounts. Ms. Myers James' supervisors, including Mr. Abrahamson, knew Ms. Myers James routinely worked after hours but did not instruct her to stop or raise any complaints to her about her work hours until terminating her on March 1, 2018.

32. Ms. Myers James was 70 years old at the time of her discharge. After discharging Ms. Myers James, Defendant replaced her with Meghan Moore, who was 26 years old at the time.

33. Defendant's decision to discharge Ms. Myers James was without warning. Ms. Myers James had not been subjected to any prior disciplinary action or any negative performance assessments for several years preceding her termination, nor was she given an opportunity to correct any alleged workplace misconduct or performance deficiencies. Even Mr. Bowlby, Ms. Myers James' first-level supervisor, expressed surprise at the sudden termination. Mr. Abrahamson ordered Ms. James to gather her belongings and leave immediately on March 1, 2018, without finishing the workday.

34. Although Mr. Abrahamson alleged that he had discussed plans to discharge Ms. Myers James with other managers and officers, one of Defendant's owners called her to discuss what happened because he only learned about her discharge through an e-mail sent by Mr. Abrahamson after he had already discharged Ms. Myers James.

35. Defendant, through Mr. Abrahamson, fired Plaintiff Myers-James because of her age and because of her complaints about her long work hours without adequate compensation. The reasons given for her discharge are pretext to mask Defendant's true discriminatory and retaliatory motives.

36. Ms. Myers James only agreed to move to Tennessee to work in Defendant's Tennessee offices because of certain representations made by SASE management; namely, that she would receive assistance with her work in Tennessee so that she would no longer need to work more than eight hours per day, and that she would continue working for Defendant for at

least two years, with the option to remain a third year. Ms. Myers James would not have agreed to change her work location to Tennessee absent these representations.

37. Defendant either intentionally misrepresented information to Ms. Myers James about her expected work hours and years remaining of employment or else failed to exercise reasonable care in obtaining and communicating accurate information to her.

38. Ms. Myers James reasonably relied, to her detriment, on the false promises and representations made to her about her work conditions in Tennessee and terms of her employment contract.

39. Because of Defendant's actions, Ms. Myers James has suffered lost wages and benefits and other economic damages, as well as non-economic injuries including emotional distress, mental anguish, humiliation, and other pain and suffering.

40. Defendant's discrimination and other actions against Ms. Myers James described herein were carried out willfully, intentionally, maliciously, and with reckless indifference to her rights under the law.

## VI. CAUSES OF ACTION

### Count 1: Age Discrimination

41. Plaintiff re-alleges and incorporates herein the preceding paragraphs.

42. Defendant discriminated against Plaintiff Myers James because of her age, in violation of the ADEA and THRA.

### Count 2: Violations of the FLSA

43. Plaintiff re-alleges and incorporates herein the preceding paragraphs.

44. As a result of its actions and the conduct described above, Defendant has violated the provisions of the FLSA, 29 U.S.C. §201 *et seq.*, specifically §207(a)(1), with respect to Plaintiff.

45. By failing to accurately record, report, and/or preserve records of all hours worked by Plaintiff, Defendant has failed to make, keep, and preserve records with respect to Plaintiff sufficient to determine her wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. §201, *et seq.*

46. The foregoing conduct on the part of Defendant constitutes willful violations of the FLSA within the meaning of 29 U.S.C. §255(a), as Defendant knew or showed reckless disregard for the fact that its compensation practices with respect to Plaintiff were in violation of federal law.

47. Defendant discriminated against Plaintiff by retaliating against her and discharging her because of her exercise of her rights under the FLSA, in violation of 29 U.S.C. §218c.

### Count 3: Violation of Tenn. Code Ann. § 50-1-102

48. Plaintiff realleges and incorporates the preceding paragraphs.

49. Defendant used false or deceptive representations, false advertising, and/or false pretenses to induce Ms. Myers James to change her place of employment from Washington state to Tennessee, in violation of Tenn. Code Ann. § 50-1-102.

### Count 4: Fraudulent and/or Negligent Misrepresentation

50. Plaintiff realleges and incorporates the preceding paragraphs.

51. Defendant either fraudulently or negligently misrepresented to Ms. Myers James that her job would require less work hours in Tennessee than it did in Washington and that she would be able to continue working for at least two years, and Ms. Myers James reasonably relied upon this misrepresentation in accepting the job transfer.

### Count 5: Promissory Estoppel and/or Fraud

52. Plaintiff realleges and incorporates the preceding paragraphs.

53. Defendant made unambiguous promises to Plaintiff with regards to the terms and conditions of her employment in Tennessee, which promises were broken either through fraud or otherwise.

54. Plaintiff reasonably relied upon the promises made by Defendant to her detriment, and she has suffered damages as a result of her reasonable and detrimental reliance.

### V. Prayer for Relief

57. Plaintiff Ms. Myers-James requests that the Court grant her the following relief:

   a. Enter judgment for Plaintiff and against Defendant; declare that the actions of Defendant violate the ADEA, THRA, FLSA, and Tennessee statutory and common law;

   b. Order Defendant to pay Plaintiff back pay, benefits, increments, and financial adjustments to which she is entitled;

   c. Order Defendants to reinstate Plaintiff or, in the alternative, to award her front pay;

   d. Order Defendant to pay Plaintiff relocation expenses and other non-wage economic damages that Plaintiff has suffered as a result of Defendant's unlawful actions;

e. Award Plaintiff liquidated damages for Defendant's willful violations of the ADEA and the FLSA;

f. Award Plaintiff compensatory damages for Defendant's intentional violations of state and federal law;

g. Award Plaintiff punitive damages for Defendant's unlawful actions which were done intentionally, maliciously, and/or with reckless indifference toward Plaintiff's rights;

h. Award Plaintiff reasonable attorney's fees and costs of this cause;

i. Award Plaintiff interest and any other relief this Court deems just, proper, and equitable.

58. Plaintiff requests a jury trial in this cause.

Respectfully submitted *pro se* this 28th day of August 2018,

Paulette Myers James, *pro se*
230 Rockford Cedar St.
Rockford, TN 37853
(253) 720-8033
pjunlimited@hotmail.com